**Ricky WARLICK, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 02S00–9810–CR–539.

Supreme Court of Indiana.

Jan. 27, 2000.

Bruce R. Snyder, P. Stephen Miller, Fort Wayne, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Kathryn Janeway, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

BOEHM, Justice.

Ricky Warlick pleaded guilty to murder and burglary as a Class A felony. The State sought a sentence of life imprisonment without parole, alleging that Warlick intentionally killed while committing a bur-

glary. Warlick was sentenced to life imprisonment without parole on the murder count, to be served concurrently with a thirty year sentence for burglary. In this direct appeal of that sentence, Warlick contends that (1) the trial court considered non-statutory aggravators; (2) the trial court failed to consider mitigating circumstances clearly supported by the record; and (3) the trial court improperly weighed the aggravating and mitigating circumstances. We affirm the trial court.

## Factual and Procedural Background

At approximately 6:00 a.m. on June 13, 1996, Annie Warlick was lying on the sofa of her sister's home where she had been staying for several weeks. She was holding her infant daughter, Tekia, and her brother was sitting at the other end of the sofa. Warlick, Annie's estranged husband, entered the home, put a gun to Annie's head, and fired two shots. Warlick then turned and walked out of the house. He drove away, threw the gun out the car window, and went to his aunt's home where he told her of the killing and asked her to take him to the police department. Warlick's aunt called his father, who upon his arrival told her to call 911, which she did.

Warlick was charged with murder, burglary as a Class A felony, and criminal recklessness as a Class D felony. The State initially sought the death penalty, alleging that Warlick had intentionally killed Annie while committing or attempting to commit burglary. *See* Ind.Code § 35–50–2–9(b)(1)(B). That count was later dismissed at the request of the victim's family and replaced with a request for life without parole, based on the same aggravator.

On February 5, 1998, Warlick pleaded guilty to all counts without a plea agreement. After the penalty phase hearing, the trial court found that Warlick intentionally killed Annie during the commission of a burglary. It found Warlick's remorse as the sole mitigating circumstance, found that the aggravating circum-

stance "substantially outweigh[ed]" the mitigating circumstance, and imposed a sentence of life without parole on the murder count, to be served concurrently with a term of thirty years for the burglary count. The State dismissed the criminal recklessness count.

## I. Non–Statutory Aggravators

■ Warlick contends that the trial court erred in considering non-statutory aggravating circumstances in imposing a sentence of life without parole. In *Bivins v. State*, 642 N.E.2d 928, 955 (Ind.1994), this Court held that trial courts, in deciding whether to impose a sentence of death, are limited by the aggravating circumstances specified in the death penalty statute. *See* Ind.Code § 35–50–2–9(b). The same rule applies to life imprisonment without parole. *See Farber v. State*, 703 N.E.2d 151, 153 (Ind.1998); *Ajabu v. State*, 693 N.E.2d 921, 936 (Ind.1998) ("The statute provides that life without parole is imposed under the same standards and is subject to the same requirements.").

■ Warlick points to three alleged aggravators that he contends the trial court impermissibly considered. First, he quotes the trial court's statement at the sentencing hearing that he "forced his way into the house contrary to a protective or restraining order...." He contends that the use of the word "force" was impermissible because the evidence at the guilty plea hearing was that he "just walked up the step, opened the door and walked in the house." The word "force" does not appear in the trial court's sentencing order, which states that Warlick "without authority or invitation, entered the residence of Annie Warlick contrary to a restraining or protective order." The trial court's use of the word "force" at the sentencing hearing, if error at all, is harmless because it was not included in the sentencing order. *See Prowell v. State*, 687 N.E.2d 563, 565 (Ind.1997).

■ Second, Warlick asserts "since the violation of a protective order was not alleged, considering it as an aggravator was also impermissible." As this Court observed in *Prowell*, a death penalty case,

the circumstances of the crime often provides an appropriate context for consideration of the alleged aggravating and mitigating circumstances. Inclusion of the nature and circumstances of the offense in a trial court's sentencing order does not necessarily compel a conclusion that such matters were improperly considered and weighed as aggravating circumstances.

*Id.* at 567. Similarly, in *Holmes v. State*, 671 N.E.2d 841, 850 (Ind.1996), this Court found that

the trial judge's references in the sentencing order to premeditation, deliberation, moving intently from one killing to the next, and the use of extreme force and torture, makes i[t] perfectly clear that she was considering the manner in which the aggravators occurred for the sole purpose of giving an appropriate weight to those proved aggravators.

*Cf. Stevens v. State*, 691 N.E.2d 412, 437 (Ind.1997) ("Even if the facts articulated in the judge's surplus statement indicate some influence on his decision, they appear mostly to be restatements of facts which would fall within the charged aggravating factors."). In light of these authorities, we find no error in the trial court's mention of the violation of a restraining or protective order.[1] The court was merely describing the nature of the offense and restating facts necessary to determine the appropriate weight to be given to it, not finding a separate improper aggravator.

■ Finally, Warlick argues that it was improper for the trial court to consider that the killing was "with total disregard for the minor child held by the victim Annie P. Warlick. . . ." He contends that this was not part of the burglary alleged as a statutory aggravator and that the facts show that he did not know until after the shooting that his daughter was in Annie's arms. As explained above, trial courts are given some latitude in describing the nature of the statutory aggravating circumstance in order to determine the appropriate weight to give it. The trial court's observation was supported by the evidence. Although Warlick stated at the guilty plea hearing that he "didn't even notice my daughter laying there till after I shot," when asked if he had taken "any concern if anybody was with Annie at all," he responded that he had not. In sum, there was an adequate factual basis for this statement in the trial court's sentencing order and its mention did not violate *Bivins*.

## II. Failure to Consider Mitigating Circumstances

The trial court found Warlick's remorse as the sole mitigating circumstance. Warlick contends that the trial court should have also found as mitigating circumstances his lack of criminal history and "acceptance of responsibility" by surrendering to police.

■■ The allegation that the trial court failed to find mitigating circumstances requires Warlick to establish that the mitigating evidence is both significant and clearly supported by the record. *See Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999). We review the trial court's finding

---

1. Although Warlick's principal brief merely asserts that the violation of a protective order was not alleged, his reply brief adds that "[t]he only evidence of a restraining order at the penalty phase was the mention of a 'restraining order' the terms of which were not discussed and the existence of which was never formally determined." He further points out that its existence "was based solely on hearsay." However, Warlick did not object to this testimony and the "[f]ailure to object at trial waives any claim of error and allows otherwise inadmissible hearsay evidence to be considered for substantive purposes and to establish a material fact at issue." *Allen v. State*, 686 N.E.2d 760, 775 (Ind.1997).

of mitigating circumstances for an abuse of discretion. *See Penick v. State,* 659 N.E.2d 484, 488 (Ind.1995).

■ As to the first of these, Warlick points to the following comment by the State: "The only possible mitigator that I could see here is that he has a lack of significant criminal history. Not a lack of any criminal history but a lack of a significant criminal history...."[2] One of Warlick's attorneys later argued as mitigation that Warlick's

> crimes have all been misdemeanors prior to this time and they've all involved his former wife, Annie Warlick. The only place that's not 100% true is that he had a reckless driving and he had a resisting arrest involving an assault back in Tennessee when he was roughly twenty-nine years old.

Nevertheless, the trial court rejected this proffered mitigating circumstance, observing that Warlick's criminal history "certainly is significant and I suppose as a matter of hindsight it's what led up to where we are today, a series of domestic batteries, invasion of privacies, all involving domestic type of matters." This was not an abuse of discretion.[3]

■ Nor did the trial court abuse its discretion by failing to find Warlick's surrender to the police to be mitigating. Warlick shot Annie in plain view of her brother who was sitting a few feet away. Had he not surrendered, he would no doubt have been apprehended in short order. *Compare Battles v. State,* 688 N.E.2d 1230, 1237 (Ind.1997) ("[D]efendant's eventual capture and arrest were nigh unavoidable, and we cannot say that the trial court abused its discretion in failing to find that his voluntary statement to police was a mitigating circumstance entitled to any significant weight.") *with Brewer v. State,* 646 N.E.2d 1382, 1386 (Ind.1995) ("[A]ppellant had clearly succeeded in escaping responsibility for the heinous crime that he had committed nearly fifteen years before. His surrender and subsequent confession provided a major benefit to the community; that benefit to society should be reflected in the sentence imposed.").

## III. Weighing the Aggravating and Mitigating Circumstances

■ a final point, Warlick argues that the trial court failed to properly weigh the aggravating and mitigating circumstances. He concedes that the trial court has discretion in determining what weight to assign to these factors, but nonetheless contends that the trial court gave too much weight to the aggravating circumstance and not enough weight to the mitigating circumstances. His argument regarding the aggravating circumstance relies on Justice DeBruler's concurring opinion in *Matheney v. State,* 583 N.E.2d 1202, 1210 (Ind.1992): "[W]here the intent of the burglary is the intent to kill, the weight of the aggravator is greatly diminished, for the mind had formed but a single felonious intent." The majority opinion did not embrace this view but rather held: "The General Assembly could reasonably have de-

---

2. The death penalty statute lists "[t]he defendant has no significant history of prior criminal conduct" as a mitigating circumstance. Ind.Code § 35–50–2–9(c)(1) (1998). This language differs from the non-capital sentencing statute which provides as a mitigating circumstance that the defendant "has no history of delinquency or criminal activity, or the person has led a law-abiding life for a substantial period before commission of the crime." *Id.* § 35–38–1–7.1(c)(6). In the non-capital context, a single conviction or juvenile adjudication may negate this mitigating circumstance. *See, e.g., Bufkin v. State,* 700 N.E.2d 1147, 1153 (Ind.1998). In the capital context, however, the language of the statute suggests that something more is required to constitute a "significant" criminal history.

3. As we recently observed in reviewing a sentence in a non-capital case, "[s]ignificance varies based on the gravity, nature and number of prior offenses as they relate to the current offense." *Wooley v. State,* 716 N.E.2d 919, 929 n. 4 (Ind.1999). Here, Warlick was convicted of murdering the same woman against whom he had committed other domestic offenses.

termined that a murder committed by breaking and entering a dwelling in the place where a person should be able to feel secure, merited the death penalty." *Id.* at 1208. Although the aggravating circumstance here, and in *Matheney,* may not be the weightiest one, the trial court was certainly allowed to give it considerable weight.

 Warlick also argues that the trial court did not give enough weight to the mitigating circumstances. However, as explained in Part II., *supra,* the trial court did not abuse its discretion by failing to find Warlick's criminal history or acceptance of responsibility as mitigating circumstances. Therefore, what remains is Warlick's remorse after the offense as the sole mitigating circumstance to be weighed against his intentional killing of Annie during the course of a burglary as an aggravating circumstance. The trial court concluded that "[t]he aggravating circumstance of the intentional killing by the defendant, Ricky P. Warlick, Sr. of the victim, Annie Warlick, during the commission of a felony burglary, substantially outweighs the mitigating circumstance of the defendant[']s remorse."

 Although this Court has the constitutional authority to review and revise sentences, Ind. Const. art. VII, § 4, it will not do so unless the sentence imposed is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 17(B).[4] This Court's review under Rule 17(B) is very deferential to the trial court: "[T]he issue is not whether in our judgment the sentence is unreasonable, but whether it is clearly, plainly, and obviously so." *Prowell v. State,* 687 N.E.2d 563, 568 (Ind. 1997). The nature of the offense, the premeditated killing of one's estranged wife

by shooting her at close range without provocation, is severe and troubling. Weighed against the character of the offender, a man who showed remorse after the fact but had a history of misdemeanor domestic offenses against the victim, does not lead us to conclude that a sentence of life imprisonment without parole is manifestly unreasonable.

## Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and DICKSON and RUCKER, JJ., concur.

SULLIVAN, J., concurs in result.

---

4. Warlick points to Article I, § 16 of the Indiana Constitution. However, the prohibition against cruel and unusual punishment is "aimed at the kind and form of punishment, rather than the duration and amount." *Ratliff v. Cohn,* 693 N.E.2d 530, 542 (Ind.1998)

(quoting *Wise v. State,* 272 Ind. 498, 502, 400 N.E.2d 114, 117 (1980)). *See also Lawrence v. State,* 268 Ind. 330, 339–40, 375 N.E.2d 208, 213–14 (1978) (sentence of life imprisonment does not violate Article I, § 16).